## WEIGLE v. CURTICE BROTHERS COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 83.    Argued December 17, 1918.—Decided January 7, 1919.

As respects domestic retail sales of secondary packages, or the contents thereof, out of the original packages in which they were imported in interstate commerce, state laws forbidding sale of food articles containing benzoate of soda are not inconsistent with the commerce

clause or the purpose of the Federal Food and Drugs Act, although the preservative, as used, is allowed by the federal act and regulations and the containers are labeled in conformity therewith.
Reversed.

THE case is stated in the opinion.

*Mr. Walter H. Bender*, Deputy Attorney General of the State of Wisconsin, with whom *Mr. Spencer Haven*, Attorney General of the State of Wisconsin, and *Mr. J. E. Messerschmidt*, Assistant Attorney General of the State of Wisconsin, were on the brief, for appellant.

*Mr. H. O. Fairchild* for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by Curtice Brothers Company, a New York corporation, to restrain Weigle, the Dairy and Food Commissioner of Wisconsin, from enforcing certain laws of the State, especially Statutes of 1913, § 4601g. That section makes it unlawful to sell any article of food that contains benzoic acid or benzoates, with qualifications not material here. The plaintiff makes such articles from fruit, and adds benzoate of soda as a preservative. It puts them up in glass bottles and jars properly labelled under the Food and Drugs Act (June 30, 1906, c. 3915, 34 Stat. 768), packs the bottles and jars in wooden cases containing a number of the same, and ships the cases from its factory in New York to customers in Wisconsin among others. Of course the single bottles are sold in the retail trade, and their contents are served to guests in restaurants and hotels. The defendant disavowed any contention that the state laws affected or purported to affect sales by the importer in the unbroken wooden packages containing the bottles and the decree

treated that subject as taken out of the case. But the bill went farther and setting up a decision, incorporated in a regulation under the Food and Drugs Act, that benzoate of soda is not injurious to health and that objection would not be raised to it under the act if each container should be plainly labelled, contended that under the Food and Drugs Act and the Commerce Clause of the Constitution, the Wisconsin law was invalid even as applied to domestic retail sales of single bottles or the contents of single bottles of the plaintiff's goods. The defendant stood on a motion to dismiss and the District Court made a decree following the prayer of the bill. The defendant appealed.

The argument in support of the decree contends in various forms that the sale of the individual bottles, when removed from the original package after entering the State, still is a part of commerce among the States, since the act of Congress as to misbranding applies to them. But the Food and Drugs Act does not change or purport to change the moment at which an object ceases to move in interstate commerce. It imposes an obligation to label the bottles severally, although contained in one original package, as of course it may. *Seven Cases of Eckman's Alterative* v. *United States,* 239 U. S. 510, 515, 516. It provides for seizure and condemnation of misbranded or adulterated articles that have been transported from one State to another, although the transit is at an end, while the articles remain unsold or in original unbroken packages, as again it may. There is no reason why a lien *ex delicto* should be lost by the end of the journey in which the wrong was done. The two things have no relation to each other. *Hipolite Egg Co.* v. *United States,* 220 U. S. 45, 57, 58. Finally, the duty to retain the label upon the single bottles does not disappear at once. For reasons stated in *McDermott* v. *Wisconsin,* 228 U. S. 115, if the State could require the label to be removed while the bottles remained in the importer's hands unsold, it could

interfere with the means reasonably adopted by Congress to make its regulations obeyed. But all this has nothing to do with the question when interstate commerce is over and the articles carried in it have come under the general power of the State. The law upon that point has undergone no change.

The Food and Drugs Act indicates its intent to respect the recognized line of distinction between domestic and interstate commerce too clearly to need argument or an examination of its language. It naturally wov'd, as the distinction is constitutional. The fact that a food or drug might be condemned by Congress if it passed from State to State, does not carry an immunity of foods or drugs, making the same passage, that it does not condemn. Neither the silence of Congress nor the decisions of officers of the United States have any authority beyond the domain established by the Constitution. *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342, 362. When objects of commerce get within the sphere of state legislation the State may exercise its independent judgment and prohibit what Congress did not see fit to forbid. When they get within that sphere is determined, as we have said, by the old long-established criteria. The Food and Drugs Act does not interfere with state regulation of selling at retail. *Armour & Co.* v. *North Dakota*, 240 U. S. 510, 517; *McDermott* v. *Wisconsin*, 228 U. S. 115, 131. Such regulation is not an attempt to supplement the action of Congress in interstate commerce but the exercise of an authority outside of that commerce that always has remained in the States.

*Decree reversed.*