**610**

## UNITED STATES v. GREAT ATLANTIC & PACIFIC TEA CO.
### No. 13.

Circuit Court of Appeals, Second Circuit.
Nov. 8, 1937.

Walter S. Fenton, of Rutland, Vt., for appellant.

Joseph A. McNamara, U. S. Atty., of Burlington, Vt.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a conviction upon two counts of an information, each of which charged that the defendant received an interstate shipment of "prints" of butter, misbranded in respect to their weight, and offered them for sale at one of its stores in Vermont in violation of section 2 of the Food and Drugs Act (21 U.S.C.A. § 2). The butter was shipped from the defendant's warehouses outside the state of Vermont in cardboard shipping boxes, each containing 50 blocks or "prints" of butter. Each print was wrapped in a paper covering which bore a printed statement that it contained creamery butter of the net weight of one pound. The shipping boxes had no marks indicating their weight or contents. After receipt at the defendant's store the prints were removed from their shipping box and placed in a showcase for sale to prospective customers. When tested by a state food inspector, fifty-nine out of sixty-six prints in the showcase at the St. Albans store were found to be underweight. At the Bristol store twenty-six out of thirty prints in the showcase were found short weight. There was testimony that the butter had been in the respective stores about one week at the time the inspector weighed it.

Section 2 of the Food and Drugs Act (21 U.S.C.A. § 2) prohibits the introduction into any state from any other state of any

article of food which is adulterated or misbranded as defined in other sections of the act, and declares guilty of a misdemeanor "any person who shall ship or deliver for shipment from any State * * * to any other State * * * or who shall receive in any State * * * from any other State * * * and having so received, shall deliver, in original unbroken packages, for pay or otherwise, or offer to deliver to any other person, any such article so adulterated or misbranded."

Section 8, as amended (21 U.S.C.A. §§ 9, 10), defines what is meant by "misbranded," and there can be no dispute that the underweight prints of butter were misbranded packages. McDermott v. Wisconsin, 228 U.S. 115, 130, 33 S.Ct. 431, 57 L.Ed. 754, 47 L.R.A.(N.S.) 984, Ann.Cas. 1915A, 39. The dispute arises over the phrase "original unbroken packages" in section 2. Throughout the trial the defendant contended that, since it neither delivered nor offered to deliver to any person the prints of butter until they had been removed from their shipping box and mingled with the mass of property within the state, the act of offering them for sale neither had been, nor could be, made a federal crime. The District Judge, however, ruled to the contrary and charged that "original unbroken packages" meant the individual prints of butter. The correctness of this ruling presents the decisive question on appeal.

Had the information charged the defendant with shipping in interstate commerce misbranded prints of butter, the conviction would have presented little difficulty. The restriction of the applicability of the Act to original unbroken packages does not apply to the shipper. Dr. J. L. Stephens Co. v. United States, 203 F. 817 (C. C.A.6); United States v. Krumm, 269 F. 848 (D.C.E.D.Pa.). But the defendant was charged only as the receiver of an interstate shipment, and section 2 declares guilty a receiver only when "having so received" he "shall deliver, in original unbroken packages, for pay or otherwise, or offer to deliver to any other person" the misbranded article.

There is surprisingly little authority construing this portion of section 2. In McDermott v. Wisconsin, 228 U.S. 115, at page 130, 33 S.Ct. 431, 434, 57 L.Ed. 754, 47 L.R.A.(N.S.) 984, Ann.Cas.1915A, 39, Mr. Justice Day said: "That the word 'package,' or its equivalent expression, as used by Congress in §§ 7 and 8 in defining what shall constitute adulteration and what shall constitute misbranding within the meaning of the act, clearly refers to the immediate container of the article which is intended for consumption by the public, there can be no question. And it is sufficient, for the decision of these cases, that we consider the extent of the word 'package' as thus used only, and we therefore have no occasion, and do not attempt, to decide what Congress included in the terms 'original unbroken package,' as used in the 2d and 10th sections, and 'unbroken package' in the 3d section."

In United States v. Five Boxes of Asafoetida, 181 F. 561, 564 (D.C.E.D.Pa.), there is a dictum by Judge Holland that claimants who had received adulterated or misbranded drugs from another state could not be convicted under section 2 if "they neither delivered nor offered to deliver it, for pay or otherwise, in the unbroken packages." The case of Dr. J. L. Stephens Co. v. United States, 203 F. 817, at page 820, (C.C.A.6), incorporates the charge of Judge Sater, who said: "The words, 'package' and 'original unbroken package,' are both used in the act. The word 'package' is not used in the same sense as 'original unbroken package.' The framers of the act manifestly had in mind the definition heretofore given by the courts to the term 'original package,' and in the second, third, and tenth sections have used that expression, or its equivalent. It is used in those sections with reference to the situations which arise where the article transmitted has reached the vendee or consignee, but has not yet become a part of the general property of the state in which the vendee or consignee lives. The package, still being unbroken, and not having become a part of the property of the state, remains subject to federal control."

We think Judge Sater's view is correct. When the statute was passed in 1906, the phrase "original unbroken package" had long been used judicially to refer to the shipping box and to mark the boundaries between federal and state control of articles transported in interstate commerce. While the goods remained in the original unbroken package, they were subject to the commerce power of Congress; after they were removed and mingled with the mass of local property, they were, in gen-

612

eral, subject to the power of the state. Brown v. Maryland, 12 Wheat. 419, 6 L.Ed. 678; May v. New Orleans, 178 U.S. 496, 20 S.Ct. 976, 44 L.Ed. 1165; Austin v. Tennessee, 179 U.S. 343, 21 S.Ct. 132, 45 L.Ed. 224; Weigle v. Curtice Brothers Co., 248 U.S. 285, 39 S.Ct. 124, 63 L.Ed. 242; Hebe Co. v. Shaw, 248 U.S. 297, 39 S.Ct. 125, 63 L.Ed. 255. We think it was with this distinction in mind, and to avoid possible questions as to the power of Congress to make it a federal offense to offer the goods for sale after interstate transportation had ceased, that applicability of the section was limited in respect to receivers to the delivery or offering of the goods in original unbroken packages. In the light of subsequent cases it may be that congressional power would extend even after the original package was broken. See Baldwin v. G. A. Seelig, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032, 101 A.L.R. 55. Even so, we are not at liberty to eliminate the phrase from the statute. No meaning whatever is given to it if it be construed to refer to the immediate container of the food— the "package" referred to in other sections of the act. Accordingly, we conclude that the conviction cannot be sustained.

Judgment reversed.