## UNITED STATES v. 2 BAGS, MORE OR LESS, EACH CONTAINING 110 POUNDS POPPY SEEDS.

Civ. No. 21092.

District Court, N. D. Ohio, E. D.

Feb. 3, 1944.

Don Miller, U. S. Atty., and F. B. Kavanagh, Asst. U. S. Atty., both of Cleveland, Ohio, for plaintiff.

George N. Levine, of Brooklyn, N. Y., and Marc J. Grossman, of Cleveland, Ohio, for defendant.

WILKIN, District Judge.

This is a civil action in which the plaintiff seeks judgment that certain bags of poppy seeds shipped by Arco Products Company in interstate commerce be seized and confiscated.[1] The gravamen of the complaint is that the seeds were adulterated within the meaning of Section 342(b) (3) and Section 342(b) (4) of Title 21 U.S. C.A. The defendant contends that there is no basis for the complaint in fact or law. In last analysis the issue turns upon a point of law.

The undisputed or established facts are that the defendant shipped to jobbers in other states white poppy seeds known as British India seeds which had been colored by charcoal pigment made from burned poppy seeds. A short time after this country's involvement in the present war Dutch Blue and Turkish poppy seeds went off the market. Those seeds have a natural blue or dark gray color and had been used extensively, almost exclusively, for decorative and flavoring purposes in the manufacture of bread, rolls, and other baked goods. When the only available poppy seed on the market was the British India white seed, the defendant devised a method of coloring it for "eye appeal". There was a marked difference between the price of Dutch Blue and Turkish seeds, on the one hand, and the British India seeds, on the other. The dark seeds sold for 65 to 90 cents a pound, while the white seeds sold for 10 to 11 cents a pound. The white seeds after being colored sold for 22½ cents a pound. The seeds were shipped in bags labeled "Produce of British India. Artifi-

cially colored with vegetable colors." In the bills sent to jobbers the goods shipped were referred to as "White poppy seed from British India. Artificially colored."

Counsel for plaintiff, at the beginning of the argument, in their brief, say:

"The question now arises on all of the testimony as to:

"I. Whether the article is adulterated within the meaning of Section 342(b) (3), Title 21, U.S.C.A., in that inferiority has been concealed by addition of substance, charcoal.

"II. Whether the article is adulterated within the meaning of section 342(b) (4), Title 21 U.S.C.A., in that substance, charcoal, has been added thereto so as to make it appear better or of greater value than it is."

If those questions are answered with reference to retailers and consumers they would have to be answered in the affirmative. If, however, they are answered with reference to jobbers, the evidence convinces the court that they should have a negative answer. In spite of the fact that the British India seeds on close examination reveal a smaller size and a more uniformly black or very dark grey shade and that Dutch Blue and Turkish seeds are somewhat larger and contain variegated shades of color, still a cursory look at the seeds would reveal no difference. Any one inexperienced in such matters would fail to note the difference between the naturally dark seeds and the artificially colored seeds. While the difference in flavor, if any, is slight and there is no difference in food value, there is nevertheless a difference in commercial value or price, and the coloring of the white seeds does conceal that price inferiority and does make the white seeds appear better or of greater value than they are. The court is satisfied from the evidence that jobbers are well aware of the distinctions and would not be deceived by the artificial coloring, especially when they are sold under a label informing the purchaser that they are the product of British India, artificially colored. The difference in price would also be a well understood notice to jobbers that the seeds sold were not Dutch Blue or Turkish.

In view of these facts the legal issue arises whether the questions are to be

[1] By agreement of parties the decision in this case is to be determinative of similar complaints filed in Scranton, Pennsylvania, namely, Civil No. 914, and in St. Louis, Missouri, Civil No. 2005.

answered with reference to the retailer and consumer or whether merely as to the consignee in the interstate sale. In view of the holding in a long line of decisions, the legality of the product must be tested by its condition at the time of seizure and not by what its condition might be after it has passed beyond interstate commerce channels or been transposed from the packages in which it was shipped or changed in form or content. U.S. v. 492 Cases, More or Less, Orange Juice, etc., D.C., 20 F. Supp. 520; U.S. v. Great Atlantic & Pacific Tea Co., 2 Cir., 92 F.2d 610, syl. 3, 4, page 611, 113 A.L.R. 961; Austin v. Tennessee, 179 U.S. 343, 21 S.Ct. 132, 45 L.Ed. 224; Sonneborn Bros. v. Cureton, 262 U.S. 506, 43 S.Ct. 643, 67 L.Ed. 1095; Schechter Poultry Corp. v. U.S., 295 U.S. 495, syl. 3, 4, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

It seems to this court that this case falls within the principles announced in U.S. v. 492 Cases Orange Juice, supra, U.S. v. Nesbitt Fruit Products, 5 Cir., 96 F.2d 972, and in U. S. v. Lexington Mill & Elevator Co., 232 U.S. 399, 34 S.Ct. 337, 58 L. Ed. 658, L.R.A.1915B, 774. In the latter case the Supreme Court held that the bleaching of flour was not within the inhibition of the statute, the purpose of the bleaching being to make bread whiter in appearance and therefore more pleasing to the eye. In this case white poppy seeds are darkened in order to give a contrast to the whiteness of the bread to which they are applied, for the same reason, to make the product more pleasing to the eye. In this respect their use is like the coloring used in candy.

There was evidence in this case that some baker used colored poppy seed not as a decoration but mixed with the dough and that the coloring faded and darkened the finished product. But that experience was the result of a sale subsequent to the interstate shipment. If the public is to be protected against the sale of colored poppy seeds unlabeled or improperly labeled it will require state law and state administration. Federal authorities cannot construe the Act of Congress as forbidding the shipment of goods properly labeled merely because they may be subsequently sold without proper label or designation. If the interstate shipment is not a "palming off" of something inferior it is not in violation of the statute merely because it has a potentiality of deception.

In the U. S. v. Nesbitt Fruit Products case above the court said: "It is true that the beverage which the retailer thus prepares and sells is inferior to pure orange juice in its vitamin content, and the added color tends to conceal the weakness of the orange juice content, but this beverage is not shipped in interstate commerce, and its preparation and sale is not within the Food & Drugs Act." 96 F.2d 972, 973.

In this case the same seeds may be sold by the retailer as were shipped in interstate commerce, but this court should not anticipate or presume that they will be sold fraudulently. This court having found that the seeds in this case were labeled and billed for what they actually were, should not determine that they are contraband merely because of the possibility that they might be used subsequently to deceive. The complaint is therefore dismissed and the seized goods are ordered returned to the defendant: owner.