## UNITED GAS PIPE LINE COMPANY, a corporation, v. J. M. LEE, as Comptroller of the State of Florida.

17 So. (2nd) 553                                                    January Term, 1944
March 7, 1944                                                              En Banc
Rehearing Denied May 1, 1944

*Yonge, Beggs & Lane* and *James Messer, Jr.,* for appellant.

*J. Tom Watson,* Attorney General, *Lawrence A. Truett* and *George M. Powell,* Assistant Attorneys General, for appellee.

CHAPMAN, J.:

The appellant, United Gas Pipe Company, a Delaware corporation, filed its bill of complaint in the Circuit Court of Leon County, Florida, against J. M. Lee, as Comptroller of the State of Florida. The prayer of the bill sought a restraining order against the collection by the collector of the tax, as provided for in Chapter 15658, Laws of Florida, Acts of 1931. Likewise, a permanent injunction on final hearing was prayed for against the Comptroller and his successors in office. The Comptroller filed a motion to dismiss the bill of complaint on numerous grounds and the motion was by the lower court granted, and the plaintiff below appealed.

The bill of complaint, in part, alleged that the plaintiff was a Delaware corporation and then engaged in the business of purchasing, gathering, transporting and selling natural gas at wholesale for resale to distributing systems and to individual consumers and agencies of the United States Government for their own use. It owned pipe lines located in Texas, Louisiana, Mississippi, Alabama, and Pensacola, Florida. It sold and delivered natural gas to four of its customers in Escambia County, Florida. Pursuant to sales made in advance, it transported the natural gas through its main pipe lines, in continuous and uninterrupted streams from points in the State of Mississippi or Louisiana through the State of Alabama into the State of Florida, and there delivered it in Escambia County to four customers.

The bill of complaint alleged that it is not now engaged and has not at any time been engaged in intrastate commerce in the State of Florida and all gas which it has sold to persons in the State of Florida has been sold, transported and delivered in interstate commerce and as part of its interstate business and none of such gas come to rest at any time in its flow from points in the State of Mississippi and Louisiana to the point of its consumption after its delivery to the purchasers by the plaintiff.

The allegations of the bill of complaint as to the delivery of the gas from the plaintiff's pipe lines, at the measuring station near Pensacola to its four customers in Escambia County, Florida, are substantially viz:

(a) Gulf Power Company. By far the greater part of the gas which has been sold by plaintiff in Escambia County has been sold and delivered at the measuring station near the city limits of Pensacola, Florida, and at the measuring station near the border of New Warrington, Florida, to Gulf Power Company, a public uitility selling gas locally at retail in the City of Pensacola and in Escambia County. Such gas was and is transported by plaintiff through its main pipe lines under pressure in a continuous and uninterrupted stream from points in the States of Mississippi or Louisiana through the State of Alabama and into the State of Florida to the point of delivery to Gulf Power Company at the outlet of the Pensacola measuring station near the city limits of Pensacola in Escambia County, Florida, and at the outlet of the New Warrington measuring station, which stations are owned and operated by plaintiff. At said stations and incidentally to its delivery to Gulf Power Company, the gas flows in uninterrupted stream through a gas regulator which automatically maintains a constant pressure for metering and delivery and through a meter for determining the amount of gas sold. At five other points on its main pipe lines in Escambia County, plaintiff delivers and has in the past delivered to Gulf Power Company gas so transported and sold to it at the outlet of taps located directly in plaintiff's main pipe line without reducing the pressure of the gas or measuring it, such reduction and measuring being done by Gulf Power Company takes possession of the gas so purchased by it at the several points of delivery mentioned in this paragraph (a) and thereafter further reduces its pressure and transmits it through its systems of distribution and service pipes and sells and delivers it locally at retail to the consuming public in the City of Pensacola and in New Warrington and elsewhere in Escambia County.

(b) Harvesters Homes Company owns a residential subdivision near Cantonment in Escambia County, Florida, and now purchases and for a short time past has purchased natural gas from plaintiff at wholesale for resale at retail to residents in said subdivision. The gas sold by plaintiff to that company was and is acquired by plaintiff and was and

is transported by it from points in the States of Mississippi or Louisiana through the State of Alabama and into the State of Florida to the point of delivery to Harvesters Homes Company by means of the same pipe lines and in the same manner as is set forth in subparagraph (a) of this paragraph and said gas is delivered to Harvesters Homes Company at the outlet of a measuring station installed and operated by plaintiff for that purpose on its main line near said subdivision. At said station the gas flows through a regulator and a meter for the same purposes and in the same manner as described in said subparagraph (a) of this paragraph, without interrupting its continuous flow. Harvesters Homes Company takes possession of the gas so purchased by it at said outlet and thereafter further reduces its pressure and transmits it through its distribution system and service pipes and sells and delivers it locally at retail to the residents of said subdivision.

5. If said Chapter 15658, Laws of Florida, Acts of 1931, should be so construed as to be applicable to plaintiff on account of the sales of natural gas to persons in Florida described in paragraph 2 of this bill of complaint as requiring plaintiff to pay the tax imposed by said chapter on account of said sales, then said chapter as so applied is void and of no effect because in violation of Clause 3 of Section 8 of Article I of the Constitution of the United States which provides that Congress shall have the power to regulate commerce among the several States and because said chapter would as so construed constitute an effort by the State of Florida to regulate commerce among the States and said Chapter as so construed and the tax imposed thereby would constitute a direct burden upon interstate commerce and upon sales of goods in interstate commerce in violation of said provision of the Constitution of the United States.

The motion to dismiss contained several grounds but the pertinent ones are viz: (1) the facts alleged are insufficient to warrant the relief sought; (2) the tax imposed is not a burden on interstate commerce; (3) it appears by the allegations of the bill that "the original package" was broken in Florida by a reduction in the pressure and the gas came

to rest in the State of Florida prior to its sale and delivery to the ultimate customers; (4) the gas when the pressure is reduced and metered was at its journey's end and taxable in Florida; (5) it appears by the bill that plaintiff's business is of an intrastate character; (6) when the pressure was reduced and the gas turned into the mains of the ultimate purchasers it was at rest for taxation purposes.

Section 1 of Chapter 15658, Acts of 1931, Laws of Florida, defines the tax; enumerates the corporations, firms and individuals, etc., liable therefor; prescribes the duty of those so engaged of reporting to the Comptroller the total amount of gross receipts annually; "the amount of gross receipts derived from business done in this State;" the amount is fixed at $1.50 on each $100.00 of gross receipts. Section 2 provides that the tax imposed shall only be upon the total amount of gross receipts received from "business done between points in the State of Florida" on the part of such companies. Section 8 of the Federal Constitution declares that Congress shall have power . . . to regulate commerce with foreign nations and among the several states with the Indian tribes . . . .

Counsel for appellee contends that the tax imposed is not a burden on interstate commerce; that the alleged facts disclose a contract for the sale of parts of mass; that the performance of the sale and delivery. can occur *only* after a severance of the parts from the mass; the reducing of pressure, severance and measurement of the gas then occurs in the State of Florida, being the point of delivery, shows a "breaking of the package" and the interstate status ceases. We are unable to sustain this theory of disposition when studying the pertinent allegations of the bill and the several grounds of the motion to dismiss directed thereto.

It is our conclusion that the facts alleged in the bill of complaint bring the appellant within the rule enunciated by the Supreme Court of the United States in the case of State Tax Commission v. Interstate Natural Gas Co., Inc., 284 U. S. 41, 52 S. Ct. 62, 76 L. Ed. 156, and similar cases. See Illinois Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 62 S. Ct. 384, 86 L. Ed. 371. The order appealed from is

reversed with directions for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

BROWN and ADAMS, JJ., and WELCH, Circuit Judge, concur.

BUFORD, C. J., dissents.

BUFORD, C. J., dissenting:

This is a suit to enjoin the collection of a certain tax.

The following matters appear from the appellant's history of the case: Appellant is a Delaware corporation; it purchases, gathers, transports and sells natural gas at wholesale; it owns main pipe lines located chiefly in Texas, Louisiana, Mississippi, Alabama and in Escambia County, Florida; appellant has sold and delivered gas to four customers in the latter county; in pursuance of contracts made in advance covering such sales, it has transported such natural gas through its main pipe lines in continuous and uninterrupted stream from points in Mississippi or Louisiana through Alabama and into Florida; none of the four customers in Florida is in any way affiliated with appellant; appellant has delivered the gas to each purchaser at the outlet of a measuring station in Escambia County, Florida, at which station incidentally to its delivery the gas continues its flow in uninterrupted stream through a gas regulator which automatically maintains a constant reduced pressure for metering and delivery and through a meter for determining the amount of gas sold; the gas is in transit without reduction of pressure up to the point of delivery to the purchaser, at which it is metered and its pressure reduced for the first time; the gas does not go into distribution pipes or service pipes until after it is delivered to the purchaser; Gulf Power Company and Harvesters Homes Company purchase at wholesale for resale locally at retail; and the other two customers, Florida Pulp and Paper Company and United States Naval Air Station, purchase at wholesale for their own use.

It further appears from appellant's history that Chapter 15,658, Acts of 1931, requires all corporations receiving pay-

ment for natural gas (and for certain other things) to report annually to the Comptroller the total amount of gross receipts derived from business done in the State of Florida for the preceding calendar year and at the same time pay the sum of $1.50 upon each $100.00 of such gross receipts as a license or excise tax; that Section 2 of this Act provides:

"The tax hereby imposed shall only be upon the total amount of gross receipts received from business done between points in the State of Florida on the part of such companies." that shortly before this action was commenced, appellee as Comptroller demanded that appellant make returns of amounts asserted to be due from January 1, 1932, under the aforesaid Act, announcing that upon appellant's failure to make such return he would proceed to collect the tax with penalties; that appellant then instituted this action to enjoin the Comptroller's effort to collect.

The court sustained appellee's motion to dismiss the original bill and an amended bill and, appellant not desiring to amend further, the court entered judgment finally dismissing the action. This appeal is from that judgment.

Appellee contends that the appellant's two questions, which we shall presently give, are both supported by the same general contention, viz: "that the transactions taxed by the act in question are not such as constituted interstate or intrastate business or commerce." Appellee further states that the transactions in question are defined by the bill as sales and contends that "the sales were not such as were, or could be, consummated in advance of the delivery of the commodity sold, because until delivery after measurement, the property sold was not specified or identified so that title of the thing sold could pass to the purchaser or the amount due for it (price) be calculated;" that the "sale was not of the entire quantity in the pipe line, but only a part of it to be severed from the entire quantity, and then after the pressure was reduced and the bulk was thereby broken, it was measured and delivered." To support his contention that the bill shows conclusively that the method of delivery and the transaction were intrastate, appellee quotes portions of the bill. We will attempt to give the substance of or to quote

more limited portions of the bill in order to show the method of delivery, etc., of the gas.

Sub-paragraph (a) of the bill deals with the Gulf Power Company which from the allegations of the bill appears to have had delivered to it the major portion of the gas sold in Escambia County by appellant. The sub-paragraph alleges in part:

". . . . Such gas was and is transported by plaintiff through its main pipe lines under pressure and in a continuous and uninterrupted stream from points in the States of Mississippi or Louisiana through the State of Alabama and into the State of Florida to the point of delivery to Gulf Power Company at the outlet of the Pensacola measuring station near the city limits of Pensacola in Escambia County, Florida, and at the outlet of the New Warrington measuring station, which stations are owned and operated by plaintiff. At said stations and incidentally to its delivery to Gulf Power Company, the gas flows in uninterrupted stream through a gas regulator which automatically maintains a constant reduced pressure for metering and delivery and through a meter for determining the amount of gas sold. At five other points on its main pipe lines in Escambia County, plaintiff delivers and has in the past delivered to Gulf Power Company gas so transported and sold to it at the outlet of taps located directly in plaintiff's main pipe line without reducing the pressure of the gas or measuring it, such reduction and measuring being done by Gulf Power Company after delivery to it. Gulf Power Company takes possession of the gas so purchased by it at the several points of delivery mentioned in this paragraph (a) and thereafter further reduces its pressure and transmits it through its system of distribution and service pipes and sells and delivers it locally at retail to the consuming public in the City of Pensacola and in New Warrington and elsewhere in Escambia County."

Sub-paragraph (b) deals with Harvesters Homes Company and it is alleged that the gas ". . . is transported by it (appellant) from points in the States of Mississippi or Louisiana through the State of Alabama and into the State of Florida to the point of delivery to Harvesters Homes Com-

pany by means of the same pipe lines and in the same manner as is set forth in subparagraph (a) of this paragraph and said gas is delivered to Harvesters Homes Company at the outlet of a measuring station installed and operated by plaintiff for that purpose on its main line near said subdivision. At said station the gas flows through a regulator and a meter for the same purposes and in the same manner as described in said subparagraph (a) of this paragraph, without interrupting its continuous flow. Harvesters Homes Company takes possession of the gas so purchased by it at said outlet and thereafter further reduces its pressure and transmits it through its distribution system and service pipes and sells and delivers it locally at retail to the residents of said subdivision."

The allegations of sub-paragraphs (c) and (d) apparently are similar to (b) except that the customers therein referred to purchase the gas for their own use.

### Appellant's Questions.

(1) "Where, in pursuance of contracts made in advance for the sale of natural gas, a foreign corporation has transported the gas through its main line pipes under pressure in continuous and uninterrupted stream from points where it has purchased it in Mississippi or in Louisiana through Alabama and into Florida and has there delivered it to four purchasers, each at the outlet of a separate measuring station, at which station, incidentally to its delivery, the gas continues its flow in uninterrupted stream through a gas regulator which automatically maintains a constant reduced pressure for metering and delivery and through a meter for determining the amount of gas sold: And two of such purchasers take the gas at wholesale for resale locally at retail and the other two take it at wholesale for their own use: and the gas is in transit through the corporation's main pipe lines without reduction of pressure up to the place of delivery to the purchaser, are such sales subject to the tax imposed by Charter 15,658, Acts of 1931?"

Appellant's second question contains the same prefatory statement as the first and concludes as follows:

(2) ". . . ,Would not the levy upon the proceeds of such sales of the tax imposed by Chapter 15,658, Acts of 1931, be invalid as a burden upon interstate commerce in violation of the commerce clause of the constitution of the United States?"

Appellee's contention with respect to appellant's questions, has already been pointed out.

I am duly mindful of the enunciations of the Supreme Court of the United States in the cases of State Tax Commission v. Interstate Natural Gas Co., Inc., 284 U. S. 41, 52 S. Ct. 62, 76 L. Ed. 156, and similar cases. See Illinois Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 62 S. Ct. 384; 86 L. Ed. 371.

The conclusion reached in those cases was that the gas was in continuous interstate transportation until it was delivered to the customer pursuant to contract between the vendor and vendee. I am inclined to the view that it is not unreasonable to assume that when it has been brought to the attention of the Supreme Court of the United States that there is a definite hiatus between the point where the gas to be delivered to the customer is diverted from the main pipe line into appellant's measuring station under reduced pressure and the point where the so diverted gas is delivered to the customer through appellant's meters, the Court will then hold that the gas was divested of its interstate character when it was so diverted from the main line and became the subject of intra-state commerce before it was delivered through appellant's measuring meters to its several vendees.

My conclusion is that in this case the gas ceased to move in interstate commerce when the gas was diverted from appellant's main pipe line into appellant's measuring stations; that in these measuring stations the gas so diverted from the main pipe line then proceeded under lower pressure through appellant's meters whereby it was delivered to the distributor or purchaser. Thus there was a breaking of the bulk and a local delivery of a portion.

It appears to me that this just as effectively constituted the sale (consummated by delivery) a transaction in intrastate commerce as would be a transaction in which a vendor

consigns a bulk shipment to itself, receives it in its warehouse and then distributed the merchandise to customers from its warehouse. Such transactions are uniformly held to be intra-state transactions and not to come within the purview of tax inhibitions on inter-state commerce. See May v. New Orleans, 178 U.S. 496, 507, 20 S. Ct. 976, 44 L. Ed. 1165; U. S. v. Grant Atlantic and Pacific Tea Company, 92 Fed. 2nd 610, 611; Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; Austin v. Tennessee, 179 U. S. 343, 21 S. Ct. 132, 45 L. Ed. 224; Weigle v. Curtice Brothers Co., 248 U. S. 285, 39 S. Ct. 124, 63 L. Ed. 242; Hebe Co. v. Shaw, 248 U.S. 297, 39 S. Ct. 125, 63 L. Ed. 255; Department of Public Utilities v. Arkansas Louisiana Gas Co., 108 S. W. 2nd 586; Commonwealth v. Paul, 148 Pa. 559, 24 A. 78; Caster v. Flannelly, 96 Kan. 372, 152 p. 22, P.U.R. 1916C, 810; West Virginia & Maryland Gas Co. v. Towers, 134 Md. 137, 106 A. 265, P.U.R. 1919D, 332; East Ohio Gas Co. v. Tax Commission, 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171; 7 Enc. U. S. Sup. Ct. Reports 298; Tres Ritos Ranch Co. v. Abbott, 105 P. 2nd 1070; Nathan v. Louisiana, 8 How. 73, 81 12 L. Ed. 992; Mexican Petroleum Corporation v. City of South Portland, 121 Me. 128, 115 A. 900, 26 A.L.R. 965; Parkes v. Bartless, 216 N.W. 492, 495; Pacific States Box & Basket Co. v. Gehlar, D. C. Or. 9 F. 341, affirmed Pacific States Box & Basket Co. v. White, 56 S. Ct. 159, 296 U. S. 176, 80 L. Ed. 138, 101 A.L.R. 853; Cleveland Macaroni Co. v. State Board of Health of California, D. C. Cal., 256 F. 376; Cline v. Consumers Co-op. Gas & Oil Co., 274 N.Y.S. 362, 152 Misc. 653; Commonwealth v. Kerr, 29 Pa. Dist. 896.

It appears that it is the factual condition of the transactions which govern and not the nature of the commodity and method of its transportation.

If we disregard the identity of the ownership of the main pipe line and assume a case identical with this except that the pipe line belongs to a third party which for hire and reward delivers appellant's gas to appellant's measuring station where the gas is diverted from the carrier pipe line into appellant's measuring stations where appellant takes gas under reduced pressure and delivers it through its meters to its customers,

it would appear that there could hardly be any question that the gas was divested of its interstate character at the point of diversion from the main line shipment into appellant's measuring stations. I think the identity of the ownership of the carrier pipe line is immaterial and that the diversion of a part of the gas from the main pipe to the measuring station results in breaking the package for delivery to customers, regardless of identity of such ownership.

It is also to be observed that the statute here under consideration lays no tax on this vendor which is not laid on all persons, firms or corporations engaged in like business in this State and, therefore, places no burden on this appellant which is not required to be borne by all others engaged in like business in this State. Therefore, there is no discrimination.

So, my conclusion is that the bill shows upon its face that the appellant comes within the purview of the statute, Sec. 203.01 F.S. 1941 (same F.S.A.) and the decree appealed from should be affirmed.