## SULLIVAN v. UNITED STATES.

### No. 11774.

Circuit Court of Appeals, Fifth Circuit.

May 12, 1947.

J. Madden Hatcher and R. M. Arnold, both of Columbus, Ga., for appellant.

Vincent A. Kleinfeld, Atty., Dept. of Justice, of Washington, D. C., and John P. Cowart, U. S. Atty., of Macon, Ga., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

Sullivan, a local retail merchant in Columbus, Georgia, was convicted under the Federal Food, Drug, and Cosmetics Act, 52 Stats. 1040, Sect. 301 (c) and (k), 21 U.S. C.A. § 331(c) and (k), for selling to two federal inspectors two lots of 12 tablets each of sulfathiazole taken from a bottle on the shelves of his drug store which had contained 1,000 tablets. The facts as alleged in the information and stipulated or proven on the trial are these: Between Nov. 25, 1943, and March 15, 1944, Abbott Laboratories, doing business in North Chicago, Illinois, shipped in interstate commerce to Abbott Laboratories, at Atlanta, Georgia, a number of boxes containing bottles of drugs, one of them being this bottle of 1,000 tablets of sulfathiazole, which was duly labeled as such, with a caution that they are to be used only by or on the prescription of a physician, and with the name and Chicago address of Abbott Laboratories. This bottle so labeled was on Sept. 29, 1944, in Atlanta sold to Sullivan, and by him transferred in intrastate commerce to his pharmacy in Columbus, and placed on his shelves for retail sales to customers. On Dec. 13, 1944, the two lots of 12 tablets each were taken from the bottle, placed in pasteboard pill boxes, with only the word sulfathiazole (slightly misspelled) on them, and sold to the federal inspectors. The label on the bottle was not defaced or changed, and the bottle was seen and afterwards taken in charge by the inspectors. A motion to dismiss the information as not charging a federal crime, and one for a judgment of acquittal because none was proved, were overruled and this appeal taken.

The general constitutionality of the federal Act under the commerce clause of the Constitution is admitted. The contentions are that the Act is not intended to operate on retail sales over the counter after inter-

state commerce has ended, by one who was not the importer; that the language is not clear enough to make criminals of such sellers; and that if construed to apply to them the Act is to that extent beyond the power of Congress.

It will be noted that the only interstate commerce here involved is the transportation of bottles of drugs in boxes from Chicago to Atlanta at least nine months before the sales here in question. The boxes came to rest in Atlanta and were opened by the importer, Abbott Laboratories, and the bottles were put in their stock of drugs in Atlanta for sale. Over six months thereafter Sullivan bought one bottle, which is conceded to have been duly labeled, and put it into his stock of drugs at Columbus for retail sales, where the bottle stayed for three more months. If the criminal provisions relied on apply here, they apply to all intrastate sales of imported drugs after any number of intermediate sales within the State and after any lapse of time; and not only to such sales of drugs, but also to similar retail sales of foods, devices and cosmetics, for all these are equally covered by these provisions of the Act. We are not able to conclude that the Act is to be so construed as to bring within these penal provisions most of the sales in all drug stores, beauty parlors, barber shops and retail grocery stores in the United States.

■ The general purpose of the Act is declared in its simple title: "An Act to prohibit the movement in interstate commerce of adulterated and misbranded food, drugs, devices, cosmetics, and for other purposes." Section 301(c) prohibits, (under penalty by Section 303), "The receipt in interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise". Sullivan clearly did not receive in interstate commerce any misbranded drug, nor did he proffer delivery of any in interstate commerce. A moderately strict construction of this penal provision would confine it to shippers and to importers in interstate commerce, and proffers of sale by the latter. Sullivan was a party to intrastate sales only. Moreover since this bottle was at all times duly labeled and not misbranded, no one violated this provision by receiving or proffering delivery of it.

■ Section 301(k) prohibits "The alteration, mutilation, destruction, obliteration or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale after shipment in interstate commerce and results in such article being misbranded." The labeling here was not removed or mutilated; but an act was done with respect to the drug, to wit, the removal of some of it from the labeled bottle and the placing of it in a box not sufficiently labeled under the Act, after shipment in interstate commerce and while the drug was held for sale, so that this portion of the drug became misbranded. Therefore in their broadest possible sense these words may include what happened. But we are of opinion that they ought not to be taken so broadly, but held to apply only to the holding for the first sale by the importer after interstate shipment. Since importation by merchants of all merchandise is for the very purpose of sale, the importation, as has always been held, remains incomplete till its purpose is thus realized. Brown v. Maryland, 12 Wheat. 419, 6 L.Ed. 678. The words of subsection (k), "held for sale after shipment in interstate commerce", naturally refer to this first sale by the merchant importer. It was this sale which was involved in McDermott v. Wisconsin, 228 U.S. 115, 33 S. Ct. 431, 57 L.Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas.1915A, 39, and in Baldwin v. Seelig, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032, 101 A.L.R. 55, much relied on by the government. We do not doubt, however, that the United States can prohibit the destruction of the labeling under which interstate commerce occurred, by any one at any time, in order to preserve the evidence of what was done during the interstate movement, as is fairly held in the McDermott case cited; but here this evidence was never meddled with, but went unaltered into the hands of the inspectors, and it shows a correct labeling. These main provisions

of subsection (k) were fully complied with. The attempt here made is to extend subsection (k) so as to make criminal all retail sales from the interstate package, though made clearly in intrastate commerce, unless the label on the interstate package which has been broken be reproduced on the retail package. We believe no grocer or druggist thus breaking an interstate package for a retail sale has understood this was necessary, and it is said this case is the first effort to apply the federal Act in this way. If the "holding for sale" is held to refer to all would-be sellers, no matter where or when or in what quantities, of all foods and drugs and cosmetics which at some time had moved in interstate commerce, the field of enforcement of the Act will be multiplied many times. The reason urged for so expanding it, to wit, the protection of ultimate consumers, only makes another difficulty; for while Congress may regulate interstate commerce to any extent and almost for any purpose it thinks proper, this extended application would be really a direct regulation for police purposes of what is plainly intrastate commerce, which is the peculiar province of the State.

And the State of Georgia has not neglected her duty. Title 42 of the Georgia Code deals with the subject of selling and labeling foods, drugs and toilet articles, with several cooperative references to the federal laws and regulations, as in Sect. 42-110, 42-111; and 42-802, 42-806. Sections 42-701 and ff. regulate the dispensing of poisons, this legislation dating back to the year 1876. Sections 42-101 and ff. embody comprehensive laws on the subject of foods and drugs passed in 1906 and 1908. The Uniform Narcotic Drugs Act of 1935 is found in sections 42-801 and ff. The Dangerous Drug Act of 1939 is in Sections 42-708 and ff. The last expressly covers the derivatives and compounds of sulfanilimide, and the label on the bottle here in controversy indicates that sulfathiazole is such, so that this Georgia Act applies to these sales, and Sullivan appears to have violated it here. It would seem the federal inspectors should have reported them to the Georgia inspectors. It is probable that other States have similar laws, reducing the need for Congress to interfere thus in intrastate commerce, if it has the power.

In passing this Act Congress in its title indicated that its main and direct concern was with "the movement in interstate commerce". Until that movement is complete and the importer has sold his original packages the State cannot interfere. Congress regulated what the Constitution directly authorizes. There is no indication of any intention to regulate intrastate commerce because of any burdensome effect on interstate commerce. The talismanic expression "Affecting interstate commerce" is not used, as in the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., passed shortly before. In interpreting and applying those words in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, at page 30, 57 S.Ct. 615, at page 621, 81 L.Ed. 893, 108 A.L.R. 1352, the court was careful to point out the rule of construction of statutes that a construction will not be adopted that is of doubtful constitutionality, in this very matter of federal intrusion upon the domain of the States, saying: "We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same. (Citing numerous cases.)"[1] Also in Federal Trade Commission v. Bunte Bros., 312 U.S. 349, 61 S.Ct. 580, 583, 85 L.Ed. 881, we read: "The construction of § 5 [15 U.S.C.A. § 45] urged by the Commission would thus give a federal agency pervasive control over myriads of local businesses in matters heretofore traditionally left to local custom or local law. * * * An inroad upon local conditions and local standards of such far-reaching import as involved here, ought to await a clearer mandate from Congress." Much more ought unambiguous and clear

---

[1] Shechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. though not exactly in point, is enough to raise serious doubt in this case.

words to be required when statutes creating criminal offenses are for construction. United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37; United States v. Harris, 177 U.S. 305, 20 S.Ct. 609, 44 L.Ed. 780; Kraus v. United States, 327 U.S. 614, 66 S.Ct. 705.

The purpose of this Act being to regulate "movement in interstate commerce" of foods, drugs and cosmetics, and the general purpose of subsection (k) being to prohibit mutilation of the labeling on the packages which so moved, we do not find the proposed application of the ejusdem generis words "Any other act" plain enough to make criminals of retail grocers and druggists who did not import but who break and sell intrastate from the imported packages without mutilating the labeling.[2] We thus find it unnecessary to determine the constitutionality of the federal regulation of intrastate sales as here contended for, by denying that doubtful construction.

The judgment is reversed with direction to acquit the defendant below.

Judgment reversed.

---

[2] Armour & Co. v. Dakota, 240 U.S. 510, 36 S.Ct. 440, 60 L.Ed. 771, Ann. Cas.1916D, 548, and Weigle v. Curtice Bros. Co., 248 U.S. 285, 39 S.Ct. 124, 63 L.Ed. 242, held that retail sales from broken interstate packages were not governed by the federal Food and Drugs Act, 21 U.S.C.A. § 1 et seq., then in force but by the State law, partly for constitutional reasons; but the present Act differs enough to make these decisions probably not controlling here. In United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48, the shipment of the repacked drugs was in interstate commerce and was prosecuted under Sect. 301(a), and the construction of (k) was not involved at all.