# WEST VIRGINIA & MARYLAND GAS COMPANY

*vs.*

## ALBERT G. TOWERS ET AL., CONSTITUTING THE PUBLIC SERVICE COMMISSION OF MARYLAND.

*Natural gas: from another State; when taxable; interstate commerce; original package.*

When natural gas from another State leaves the main line where it is separated from the bulk of the gas on such lines and forced into intermediate lines and pipes of the individual consumers where it can not return to the main line and where it remains until used, it constitutes such a break of the "original package" as to remove it from interstate commerce and to subject it to State legislative regulation by the Public Service Commission of the State.                    pp. 143-145

The general rule is that an article imported from another State is not protected by the commerce clause of the Constitution from the interference of State laws when the original package has been sold by the importer or broken by him, or otherwise become mixed with the other property in the State.

pp. 143-144

*Decided March 7th, 1919.*

Appeal from the Circuit Court for Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Osborne I. Yellott* (with whom were *Brown, Ely & Richards* and *Piper, Yellott, Hall & Carey* on the brief), for the appellant.

*W. Cabell Bruce* and *George Weems Williams,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellees, constituting the Public Service Commission of Maryland, filed their bill in the Circuit Court of Baltimore City alleging therein that the appellant corporations, the West Virginia & Maryland Gas Co., organized and existing under the laws of the State of West Virginia, and the West Virginia & Maryland Gas Company of Maryland, organized and existing under the laws of the State of Maryland, are both gas corporations within the meaning of the Public Service Laws of Maryland. That the West Virginia & Maryland Gas Co. is engaged in the business of receiving, at the compressor station in Lewis County, West Virginia, of the West Virginia Central Gas Co., a corporation organized and existing under the laws of the State of West Virginia, natural gas derived by it from gas fields in Lewis and Harrison Counties, West Virginia, and selling it in the last named State, and of transporting it through its own mains to the State of Maryland there distributing and selling it to its various patrons in the City of Cumberland and other points in Allegany County, Maryland; and that the West Virginia & Maryland Gas Co. of Maryland is engaged in the business of receiving natural gas derived by the said West Virginia Central Gas Co., from the fields above mentioned, from the said West Virginia & Maryland Gas Co. of West Virginia, at a point on the West Virginia side of the Potomac River, near the town of Piedmont, West Virginia, and of transporting said natural gas through its own mains to the State of Maryland, and there distributing and selling it to its various patrons at the City of Frostburg and other points in Allegany County, Maryland.

It is then alleged that by order No. 246 of the appellees, passed on the 19th day of April, 1911, each and every corporation engaged in furnishing natural gas for light, heat or power was ordered to make and file with said Commission at its office in Baltimore City, and print and keep open for public inspection, schedules showing its rates and charges for such service; and that unless the Commission otherwise ordered, no change should be made in any such rate or charge after it had been filed, except after thirty (30) days' notice to said Commission, plainly stating the change proposed to be made and the time when it was to become effective; and that all such proposed changes should be shown by printing, filing and publishing new schedules, or should be plainly indicated upon the schedules in force at the time and kept open for public inspection. That pursuant to said order, each of said defendant corporations made and filed with the said Commission, schedules showing their rates and charges for furnishing such natural gas to their respective patrons within the State of Maryland, and that among the rates for natural gas, evidenced by such respective schedules, were reduced rates for service to public charities known as "class B rates" and that the same were printed and kept open for public inspection, as required by said order. But, thereafter, each of said defendant corporations increased its said "Class B rates" by one cent per thousand cubic feet, and put the same in force, and is enforcing such increased rate, without giving to the Commission the required notice of thirty (30) days, and without complying with the other provisions of said order.

It is further alleged that the appellees, under the provisions of Section 38* of the Public Service Commission Laws of Maryland, have directed its general counsel to commence an action or proceeding in the Circuit Court of Baltimore, in the name of the Commission, against the defendant corporation "for the purpose of having the said violation or threatened

*Acts 1910, Chapter 180, Section 38, page 383, Code, Article 23, Section 452.

violation of said order by said defendant companies stopped and prevented by injunction."

The defendants filed their joint answer to the bill, in which they admit the passage of said order by the Commission and the filing with it, and the printing and keeping open for public inspection, of the schedules respectively showing rates and charges for furnishing natural gas to their respective patrons in the State of Maryland, but deny "that they were compelled to file such schedules or that they are required to file the same pursuant to said Order No. 246."

They also admit that they have increased the old "Class B rates" one cent per thousand feet and have put the same in force without giving any notice thereof to the Commission, and without complying with the other provisions of the order. But aver that all natural gas delivered and sold in Maryland by them is produced in Lewis and Harrison Counties, West Virginia, and is delivered to them in the State of West Virginia; and is transported by them through their respective mains across the Maryland-West Virginia State Line, and is distributed and sold to various consumers in Allegany County, Maryland; that the natural gas is constantly in motion from the time it is received by them in West Virginia until it reaches the ultimate consumers in the State of Maryland; that the said transportation is a continuous one, from the time the gas leaves the wells in West Virginia until it is delivered into the service lines of the various consumers using said gas.

They further aver that the purchase of natural gas and its transportation by them across the West Virginia-Maryland State Line, and its distribution and sale in the State of Maryland, is interstate commerce, national in character, and that the Public Service Commission of Maryland has no authority to regulate or fix the price at which said gas is sold, or determine the justness or reasonableness of the rates charged therefor by them, and has no jurisdiction to determine the safety and adequacy, or the justness or reasonableness of the service, instrumentalities, and facilities, furnished

by them, and that the provisions of the Order No. 246, requiring a postponement of thirty (30) days before putting new rates into effect, and further requiring the printing, filing and publishing of a new schedule showing changes proposed, constitute a direct interference with interstate commerce, and are in violation of sub-division 3 of section 8 of Article 1 of the Constitution of the United States, which provides that Congress shall have the right to regulate commerce among the several States.

The Court below, upon hearing the case on bill, answer, testimony, and agreed statement of facts filed, granted the injunction as prayed, and it is from the order or decree granting the injunction that this appeal is taken.

The facts necessary to be stated, in deciding the question presented, as disclosed by the agreed statement of facts, are substantially as follows: The natural gas furnished by the defendant corporations is produced from wells in Lewis and Harrison Counties, West Virginia, owned and operated by the West Virginia Central Gas Co. of West Virginia. It is transported from the wells in gathering lines to the compressor stations, where it is compressed and taken into other pipe lines to the main compressor station, where it is again compressed. After leaving this station and passing through other pipes, it ultimately enters the main pipe lines of the defendant corporations, respectively, at points within the State of West Virginia. It is then transported through said pipe lines across the West Virginia-Maryland State Line into Maryland; and as the gas can not there be served to the consumer at the high pressure necessary for its transmission through the main lines, its pressure is reduced when it reaches the gates of a community where it is to be distributed to the consumers, by means of what is known as a regulator, and the gas is then carried through the community in low pressure mains with which the various service lines are connected. In the larger communities, such as Cumberland, Maryland, there are what is known as intermediate lines, the gas being reduced at the gates of the city and carried to various sections

by such lines, where it is again reduced in pressure and goes into the low pressure mains, with which the service lines are connected. These regulators do not interrupt the continuous flow of gas, but reduce its pressure, and when the gas once passes the regulators at the gates of the city or community, it never returns to the main transmission line. When the gas is being used by the individual consumer, it is constantly in motion from the time it leaves the wells until it is so used; but at the point where the service line enters the consumer's premises, there is located a stop cock, by the turning of which the gas is permitted or prevented from entering the premises; and on the service pipe within the owner's premises and on the inlet side of the meter, there is a stop cock by which the consumer can either cut off or control the flow of gas into the meter. Immediately beyond this latter stop cock and before said gas reaches the burner of the individual consumer, it passes through a gas meter operated by the pressure of gas; and at each burner on the premises, there is a stop cock, by the turning of which gas is permitted or prevented from entering the burner.

It will be seen that the question presented by this appeal is one of jurisdiction.

It is contended that the defendant corporations, under the facts stated, are engaged in interstate commerce in the sale and distribution of gas furnished by them to their consumers, and that the regulation of their rates and charges for such service is not within the jurisdiction of the Public Service Commission of Maryland.

Since the decision in the case of *West* v. *Kansas Natural Gas Company,* 221 U. S. 229, and the decisions in numerous other cases that might be cited, it must be conceded that the transportation of natural gas from one state to another is interstate commerce, and this, we understand, is not denied by the appellees, but their contention is that the natural gas, sold and distributed to its consumers in Maryland, had, at the time of such sale, ceased to be an article of interstate commerce.

The general rule seems to be that an article imported is not protected by the commerce clause of the Constitution from the interference of State laws when the original package has been sold by the importer, or has been broken up by him, or has otherwise become mixed with the common mass of property in the State. At such time it becomes subject to State legislation. 7 *Encyc. of U. S. Supreme Court Reports,* page 298, and the decisions cited in note thereto.

It is contended by the appellees that the sales of gas here made by the defendant corporations to the consumers were not made in the original package but, upon the facts stated, the original package or form of the article of interstate commerce was broken and that it became mixed with the common mass of property in this State, and thus became a subject of State legislation.

The term "original package" when used in these cases means the form or physical condition of the article of commerce in which it is transported in its interstate movement.

In *Brown* v. *Maryland,* 12 Wheat. 419, CHIEF JUSTICE MARSHALL uses the expression "original form or package" in referring to the article in that case. In using the word package he was no doubt influenced by the nature of the article therein referred to, which was a *package* of dry-goods. By the decision in that case, as well as the many other cases that have followed, it was not intended that by the use of such word the principle enunciated in relation to the time at which an article of commerce ceased to be a thing of interstate commerce should be limited to those articles that are capable of being put in the form of a package in the generally accepted meaning of that word, but it was likewise to apply to other articles incapable of assuming the form of a package, literally speaking, by reason of their physical properties, and to which the expression is less appropriate, such as the article in the case before us.

In the case of *State* v. *Flannelly* (Ill.), 96 Kans. 372, where the facts were somewhat similar to those in the case before us, the Court said: "The original package of gas is

broken when the first gas is taken out of the pipe lines and sold in this State.    Thereafter the gas ceases to be an article of interstate commerce. * * * It is a matter of common knowledge that service pipes from the pipe lines of the distributing companies to private residences and other buildings belong to the owners of the property served, and installations are made at their expenses.    If the analogy of original packages or importation of property in bulk applies to gas in the mains, it ceases to apply when thousands of service pipes are filled with gas to be drawn off at such times and in such quantities as the individual consumer desires.    Interstate commerce is at an end when the bulk of the imported gas is broken up for indiscriminate distribution to individual purchasers at retail sale.    The gas then becomes mixed with the common mass of property in the State."

It is true that in the case which we have just quoted, gas produced in the State of Kansas entered the pipe lines through which gas from the State of Oklahoma was transported into the former state and was sold and distributed with the Oklahoma gas to local consumers of the State of Kansas, but the reasoning of the Court in the *Flannelly case* applies to the facts of this case.

In this connection we may also add that the facts in the *Flannelly case* were before the Court in the case of *Landon* v. *Public Utilities Commission,* 242 Federal, 658; in which case the Court held that the sale and distribution of gas made therein was an interstate commerce transaction.    An appeal, however, has been taken therefrom to the Supreme Court of the United States where the case is now pending.

In determining the question whether the gas here involved was sold by the defendant corporations in the original package or form in which it was transported into this State, we must consider the effect upon it when it leaves the main line of its travel and enters into the intermediate lines for sale and distribution, and whether thereafter it is national in its nature.

It is admitted that at such time its pressure is reduced, and it is reduced because the pressure in the main pipe is too high for service to the consumers. At this point it is separated from the other gas in the main pipe and forced into the intermediate lines from whence it cannot return to the main line, but remains in such intermediate pipe lines to be consumed when needed.

Whether the gas is separated from the general bulk of gas and confined in the intermediate pipe lines where it can not return to the main pipe line and where it must remain until consumed, or whether it is so separated and stored in tanks awaiting consumption, the effect is the same, in our opinion, in determining the question whether the original package has been broken and the gas mixed with the common mass of property in this State. There may be a constant movement of the molecules of the gas, but we do not see how this movement, because of the peculiar properties of the article, can affect the question to be determined.

It also, before reaching the consumer, has to pass not only through pipes laid in the streets of the towns or villages, which is done under rights acquired from local authorities, but through pipes belonging to the owner of the premises upon which the gas is consumed. These facts all aid in characterizing the transaction as being of a local and not of a national nature. The gas when it leaves the main lines, where it is separated from the bulk of gas in such lines and forced into the intermediate lines and the pipes of the individual consumers where it can not return to the main line, and where it remains until used, is, we think, such a breaking of the original package as to remove it from interstate commerce and to make it subject to State legislation, and consequently a subject of regulation by the Public Service Commission of this State, in respect to the powers granted the Commission. *State* v. *Flannelly, supra; In re Pa. Gas. Co.,* 171 N. Y. Sup. 1028.

As we find no error in the Court's action in passing the decree appealed from, it will be affirmed.

*Decree affirmed, with costs to the appellees.*