EAST OHIO GAS CO. *v.* TAX COMMISSION OF
OHIO ET AL.

No. 453.   Argued April 22, 23, 1931.—Decided May 18, 1931.

466

*Mr. William B. Cockley,* with whom *Messrs. Thomas H. Hogsett* and *Thomas M. Harman* were on the brief, for appellant.

*Mr. Gilbert Bettman,* Attorney General of Ohio, with whom *Messrs. L. F. Laylin* and *William J. Ford* were on the brief, for appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Appellees, acting under the tax laws of Ohio, assessed against appellant additional excise taxes for 1927, 1928 and 1929. The latter brought this suit to restrain collection on the ground that, when construed to cover the amounts demanded, the state legislation is repugnant to the commerce clause of the Federal Constitution. Plaintiff applied to the court consisting of three judges for a temporary injunction; and, pursuant to stipulation made at the hearing, the case was submitted for final determination upon an agreed statement of facts. The court announced an opinion, 43 F. (2d) 170, sustaining the state enactments and entered its decree dismissing the complaint.

Under the Ohio Code every corporation engaged in the business of supplying to consumers within the State natural gas for light, heat or power is a natural gas company, § 5416, and is required to report to the tax commission, § 5470. The latter is directed annually to determine the entire gross receipts of such company, for the year ending on the then next preceding first day of May, excluding

therefrom all receipts " derived wholly from interstate
business," § 5475, and to certify the amount so determined
to the auditor of state, § 5481. He is directed to charge
each such company " a sum in the nature of an excise tax,
for the privilege of carrying on its intra-state business, to
be computed on the amount so fixed and reported by the
commission as the gross receipts of such company on its
intra-state business . . . by taking one and thirty-five
one-hundredths per cent. of all such gross receipts . . ."
§ 5483.

Appellant, an Ohio corporation, is engaged as a public
utility in the business of furnishing natural gas to con-
sumers in more than 50 municipalities in that State.
During the years in question it obtained approximately 25
per cent. of its supply from its own Ohio wells, 72 per
cent. from the Hope Natural Gas Company of West Vir-
ginia and 3 per cent. from the Peoples Natural Gas Com-
pany of Pennsylvania. The West Virginia gas is gathered
to a station in that State, there freed from gasoline vapors
and pumped at a pressure of from 200 to 300 pounds per
square inch into transmission lines which connect, at the
boundary between the States, with appellant's high pres-
sure transmission lines. By means of these the gas is
transmitted to a station in Stark county whence it is
taken by other lines to pressure reducing stations. The
lines there connect with distribution lines in which is
maintained pressure of from 30 to 50 pounds per square
inch and which are a part of the distribution system in
each municipality served. From the latter the gas enters
the local supply mains wherein pressure is reduced to
that necessary—a few ounces per square inch—to carry
the gas through the service pipes extending to the prem-
ises of consumers and suitably to supply their burners.
The consumers control the flow of gas on their premises.
The Pennsylvania gas is collected, treated, compressed
for transmission, delivered to appellant at the state line

and by it transported, relieved of pressure and conducted through such mains and service pipes to consumers' appliances precisely as is West Virginia gas. The Ohio gas is gathered and conducted from the fields in that State to the high pressure distribution lines and thereafter treated and brought to consumers as is the gas brought from the other States. Appellant's contracts with consumers do not specify any source from which it is to obtain gas. To an extent not disclosed by the record, appellant collects minimum charges for service and charges for readiness to serve without regard to the quantity of gas consumed. It furnishes to some communities exclusively gas from outside the State, to some only that from Ohio and to others a mixture of that from West Virginia and Ohio.

In accordance with the statute, as then construed by the attorney general, appellant in its reports to the tax commission for the years in question returned as receipts from interstate business all sums collected from customers receiving only gas from wells outside Ohio, treated as intrastate earnings the receipts from those using only Ohio gas, and apportioned between intrastate and interstate business, on the relation of the quantity of each to the total, receipts from those served by a mixture of Ohio and other gas. The commission accepted that classification, and the taxes were computed and paid on that basis. In 1930 appellees, construing the laws to require the inclusion of all receipts, without regard to the source of the gas furnished, applied the prescribed rate to the amounts theretofore treated as receipts from interstate business, and demanded from appellant payment of the sums so arrived at together with penalties prescribed for failure to pay excise taxes when due.

The question is whether the state statute, construed to include the amounts reported as receipts from interstate business, operates directly to regulate or burden interstate commerce.

Admittedly the exaction is not a tax on property nor in lieu of a property tax. The statute calls it, and in fact it is, a tax for the privilege of carrying on intrastate business. Receipts from interstate business are expressly excluded from the calculation. It is elementary that a State can neither lay a tax on the act of engaging in interstate commerce nor on gross receipts therefrom. *Pullman Co.* v. *Richardson*, 261 U. S. 330, 338. *New Jersey Tel. Co.* v. *Tax Board*, 280 U. S. 338, 346. And, while a State may require payment of an occupation tax by one engaged in both intrastate and interstate commerce, the exaction in order to be valid must be imposed solely on account of the intrastate business without enhancement because of the interstate business done, and it must appear that one engaged exclusively in interstate business would not be subject to the imposition and that the taxpayer could discontinue the intrastate business without withdrawing also from the interstate business. *Sprout* v. *South Bend*, 277 U. S. 163, 170–171, and cases cited.

The transportation of gas from wells outside Ohio by the lines of the producing companies to the state line and thence by means of appellant's high pressure transmission lines to their connection with its local systems is essentially national—not local—in character and is interstate commerce within as well as without that State. The mere fact that the title or the custody of the gas passes while it is en route from State to State is not determinative of the question where interstate commerce ends. *Public Utilities Comm.* v. *Landon*, 249 U. S. 239, 245. *Missouri* v. *Kansas Gas Co.*, 265 U. S. 298, 307–309. *Peoples Gas Co.* v. *Pub. Serv. Comm.*, 270 U. S. 550, 554. *Public Util. Comm.* v. *Attleboro Co.*, 273 U. S. 83, 89. But when the gas passes from the distribution lines into the supply mains, it necessarily is relieved of nearly all the pressure put upon it at the stations of the producing

companies, its volume thereby is expanded to many times what it was while in the high pressure interstate transmission lines, and it is divided into the many thousand relatively tiny streams that enter the small service lines connecting such mains with the pipes on the consumers' premises. So segregated the gas in such service lines and pipes remains in readiness or moves forward to serve as needed. The treatment and division of the large compressed volume of gas is like the breaking of an original package, after shipment in interstate commerce, in order that its contents may be treated, prepared for sale and sold at retail. *State* v. *Flannelly,* 96 Kan. 372, 383-384; 152 Pac. 22; *W. Va. & Md. Gas Co.* v. *Pub. Serv. Comm.,* 134 Md. 137, 143-145; 106 Atl. 265. Cf. *Atlantic Coast Line* v. *Standard Oil Co.,* 275 U. S. 257, 269. *Brown* v. *Maryland,* 12 Wheat. 419. *Leisy* v. *Hardin,* 135 U. S. 100. It follows that the furnishing of gas to consumers in Ohio municipalities by means of distribution plants to supply the gas suitably for the service for which it is intended is not interstate commerce but a business of purely local concern exclusively within the jurisdiction of the State.

Appellant relies on *Pennsylvania Gas Co.* v. *Public Service Comm.,* 252 U. S. 23. There the question was whether the New York commission had jurisdiction to prescribe the rates to be charged local consumers of gas transported to that State from Pennsylvania. This court, following the findings of the highest court of New York (225 N. Y. 397, 403-404; 122 N. E. 260), held that the entire movement of the gas was interstate commerce and that, in the absence of contrary regulation by the Congress, the state commission had jurisdiction to prescribe such rates. The theory on which that conclusion was reached is not wholly consistent with the views expressed in *Public Utilities Comm.* v. *Landon, supra,* and in *Missouri* v. *Kansas Gas Co., supra.* In the former the court

said (p. 245): "Interstate movement [of natural gas being transported from State to State] ended when the gas passed into local mains." In the latter, it was said (p. 308): "With the delivery of the gas [transported from one State to another] to the distributing companies . . . the interstate movement ends. Its subsequent sale and delivery by these companies to their customers at retail is intrastate business and subject to state regulation. . . . In such case the effect on interstate commerce, if there be any, is indirect and incidental . . . [p. 309]. The business of supplying, on demand, local consumers is a local business, even though the gas be brought from another State and drawn for distribution directly from interstate mains; and this is so whether the local distribution be made by the transporting company or by independent distributing companies. In such case the local interest is paramount, and the interference with interstate commerce, if any, indirect and of minor importance." It does not appear that there were presented, in *Pennsylvania Gas Co.* v. *Public Serv. Comm.,* to the state court or here the considerations on which it is held that interstate commerce ends and intrastate business begins when gas flowing through pipe lines from outside the State passes into local distribution systems for delivery to consumers in the municipalities served. But, however that may be, the opinion in that case must be disapproved to the extent that it is in conflict with our decision here.

The Ohio statute does not purport to affect interstate commerce. The specified excise taxes are laid for the privilege of carrying on intrastate business. The amounts were calculated on gross receipts derived wholly from appellant's intrastate business notwithstanding the gas used had moved in interstate commerce.

*Decree affirmed.*