TENNESSEE NATURAL GAS LINE, INC., v. Z. D. ATKINS,
Commissioner of Finance and Taxation of
the State of Tennessee.

(*Nashville,* December Term, 1955.)

Opinion filed February 3, 1956.

PHIL B. WHITAKER, of Chattanooga, and FERRISS C. BAILEY, of Nashville, for complainant.

GEORGE F. McCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, and MILTON P. RICE, Assistant Attorney General, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This suit was brought by the Tennessee Natural Gas Lines, Inc., to recover taxes alleged to have been illegally exacted of it by the Commissioner of Finance and Taxation and paid under protest.

The Chancellor in a well considered opinion sustained the bill of complainant, and the State appealed.

The question for decision is thus posed by the State's Attorney General, as counsel for the defendant Commissioner:

"This case involves the question of whether a Tennessee corporation, operating entirely within Tennessee and engaged in the buying of natural gas from an interstate pipe line company and the reselling of a portion of that gas to a large industrial user, is subject to a tax upon its gross receipts with respect to the gas so used under Section 1248.3, Item H of the Code Supplement of 1950, which reads, insofar as here pertinent, as follows:

" 'Item H. *Gas, water, electric power and light companies.*—Each person engaged in the business of furnishing or distributing gas, water, or electric current, whether to dealer, consumer, municipality or other customer, shall, for the privilege of doing such business, pay to the state for state purposes an amount equal to three per cent (3%) of the gross receipts derived from intrastate business in the state. Persons engaged in the business of manufacturing gas or of distributing manufactured gas or natural gas shall, in lieu of the foregoing, pay an amount equal to one and one-half per cent (1½%) of the gross receipts derived from intrastate business in this state, which payment shall be subject to the same provisions, restrictions and credits hereinafter provided in this item.

" 'This tax shall not apply to cities or other political subdivisions of the state owning and operating gas companies, water companies or power plants; nor shall it apply to any governmental agency of the United States.

" 'It is the intention of this item to levy a tax for the privilege of engaging in intrastate commerce car-

ried on wholly within this state and not a part of interstate commerce. * * *'"

The facts, as shown by the bill and answer (the case was heard by consent on bill and answer), are correctly stated on the appellant's brief as follows:

"Complainant is a Tennessee corporation engaged in buying and selling of natural gas. Incidental to this business it owns, operates and maintains approximately 29.-87 miles of high pressure natural gas pipe lines extending from Westernia in Cheatham County in a general southeasterly direction to Old Hickory in Davidson County. This line connects at Westernia with the interstate gas transmission lines of the Tennessee Gas Transmission Company, from which concern complainant purchases all of its gas. The Tennessee Gas Transmission Company's lines extend from gas fields in Louisiana and Texas northwardly across Tennessee and into various Northern and Eastern states.

"Complainant maintains six stations along its lines at which it makes deliveries of gas to its customers—the E. I. Dupont De Nemours & Company and the Nashville Gas Company. The gas sold to the Dupont Company is delivered to that company at Old Hickory from a metering station which complainant maintains on the premises of the buyer, where the pressure is reduced prior to the gas entering the buyer's service lines. Complainant makes deliveries to its other customer, the Nashville Gas Company, at five separate stations in Davidson County. Nashville Gas Company is the wholly-owned subsidiary corporation of complainant and sells gas to consumers in the Nashville area.

"Complainant's attorneys in the early part of 1948 addressed a letter to the then Attorney General of Tennessee the Honorable Roy H. Beeler, in which they took

the position that they were not liable for the gross receipts tax in question. The then Advocate General, and present Solicitor General, the Honorable Allison B. Humphreys, responded, disagreeing with complainant's attorneys and taking the position that complainant was liable for the tax. This was the only occasion where complainant took any exception to the payment of the tax, and it has paid same regularly as it became due since that time, and its filing of its bill in this cause represents the first challenge of the tax as applied to complainant.

"On August 4, 1954, complainant paid the defendant under protest the sum of $39,084.71, such sum representing complainant's taxes for the years 1954 and 1955, which taxes were due on August 1, 1954. Thereafter it seasonably filed this suit seeking the recovery of the taxes. Both the payment under protest and the filing of the suit are within the meaning of and constitute a compliance with Sections 1790 et seq. of the Code.

"Prior to the decision of this case in the lower court, defendant abandoned any contention that the tax was applicable to gas sold by complainant for resale purposes and taxed upon resale, leaving the sole question for determination the application of the tax to complainant's sales for industrial consumption to the Dupont Company."

The complainant, appellee here, makes the following insistence:

"It is the complainant's position that it is not liable for the tax (1) because it is not a distributor of natural gas as this term is used in the statute, that the tax is only levied on 'distributing natural gas,' and that the complainant is not engaged in the business of distributing natural gas; and (2) because all sales made by the complainant both to the Nashville Gas Company and to its

only other customer, the Dupont Company, are 'a part of interstate commerce', and because the statute expressly says that

" 'It is the intention of this item to levy a tax for the privilege of engaging in intrastate commerce carried on wholly within this state *and not a part of interstate commerce.'* (Emphasis supplied.)

"It is the complainant's position that all of its operations are essentially an integral part of interstate commerce even though its properties are located wholly within the State of Tennessee and even though all the gas it sells is sold and consumed within the State of Tennessee."

■ It clearly appears from the facts stated that the complainant herein *is not an interstate carrier* of natural gas. On the contrary it is a buyer of natural gas from an interstate carrier, to wit, Tennessee Gas Transmission Company, and is in the business of re-selling to the Nashville Gas Company and the Dupont Company. It owns and operates its own facilities for that purpose. Is this activity "a part of interstate commerce"? The concluding paragraph of the statute, quoted above, expresses a clear legislative intention, that the tax is "for the privilege of engaging in intrastate commerce carried on *wholly within this state and not a part of interstate commerce."* (Emphasis ours.) We construe this to mean that the State has no desire or intention to impose the tax upon any transaction that would be admittedly in violation of law. In other words, if the transaction in the instant case is "a part of interstate commerce" in the sense that the tax imposed is an unreasonable burden upon such commerce, then in that event the statute, Code Section 1248.3, Item H, supra, has no application.

Complainant's bill charges "it is engaged in the busi-

ness of *transmitting* natural gas''; that ''it owns and uses in its business pipelines some 29.87 miles in length through which natural gas is *supplied* to the Dupont Company''. But, says the complainant, ''it is not *distributing* natural gas within the meaning of the statute.''

It must be conceded that the purchase of natural gas by the complainant is an interstate transaction. However, the transaction with which we are now concerned is the re-sale to Dupont of natural gas which has become the sole property of the complainant. The purchase and re-sale is not one continuing transaction. The fact that the interstate carrier owns and furnishes the meter located at the Dupont plant, and reads it from time to time to determine the amount of natural gas consumed is not a controlling factor in the present controversy. It is incidental to the contract between complainant and Dupont.

The contention of complainant is based upon the theory that the natural gas has its origin in the States of Texas and Louisiana; that it flows without interruption through these states into and across the State of Tennessee and comes to rest at the plant of the consumer, i. e. the Dupont Company, and that it is therefore wholly and exclusively ''interstate commerce.''

We think the foregoing insistence is untenable because the complainant, as a domestic corporation, is engaged in the business of dealing in natural gas. The gas which it purchases from the Tennessee Gas Transmission Company is supplied to its customers by the exclusive use of its own facilities.

It should be kept clearly in mind that but for the complainant's vast facilities for supplying natural gas there could be no possible re-sale to consumers. The activities of the complainant in the case at bar brings it squarely within the taxing statute. Moreover a tax that

is levied upon the *local aspects* of a business that is both interstate and intrastate does not *per se* impose a burden on interstate commerce. *Interstate Oil Pipe Line Co.* v. *Stone,* 337 U. S. 662, 69 S. Ct. 1264, 93 L. Ed. 1613, and authorities cited therein. The tax in question in no way interferes with the interstate business of the original producer of natural gas. On the contrary it affects a local business, the complainant, and does not lend itself to any limitation, directly or indirectly, of interstate transactions. *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823. It conclusively appears to us that since all of complainant's product is bought and sold within the boundaries of Tennessee, and the business is local in its every aspect, no other state can possibly impose another tax upon it. In these circumstances the tax cannot amount to a regulation of interstate commerce. The fact that the original consignor, and also the complainant, may be subject to the Federal Power Commission, does not in any sense debar the State of Tennessee of its right to levy a tax upon the complainant for the privilege of carrying on a business that is exclusively intrastate in character.

The learned Chancellor in sustaining the complainant's bill, thus allowing a recovery of the tax, rested his opinion upon *Memphis Natural Gas Co.* v. *McCanless,* 180 Tenn. 688, 177 S. W. (2d) 841. The complainant's counsel earnestly insists that it controls the case at bar. There is also cited on the brief *East Ohio Gas Co.* v. *Tax Commission of Ohio,* 1930, 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171, and other Federal authorities.

In the Memphis Natural Gas Co. case, supra [180 Tenn. 688, 177 S. W. (2d) 842], the tax sought to be collected was levied on " 'distributing * * * natural gas'." The bill was sustained on the ground that the complain-

ant "was not distributing" such gas. It is pointed out by the Court, Green, Chief Justice, writing the opinion, "The complainant *maintains* a pipe line from Louisiana through Arkansas and Mississippi to the outskirts of the City of Memphis, in Tennessee. From Memphis it has other and smaller pipe lines passing though Shelby County which reach Brownsville, * * * and other Tennessee towns. At various points along complainant's lines it is tapped by service lines which carry gas to the homes and business places * * *. *None of these service pipes,* however, belong to the complainant, nor has the complainant any control of them." (Emphasis ours.) The opinion points to the fact that gas entering the service pipes is measured at such places. The gas is distributed by other agencies. The complainant *"has nothing to do with the distribution and sale of the gas by such agencies."* (Emphasis ours.)

A mere statement of the determinative facts distinguishes the Memphis Natural Gas Co. case, supra, from the case at bar. The former is admittedly an interstate carrier, while the latter is engaged in an *intrastate* business. In the former the Commissioner sought to levy a tax upon gas which had been distributed by other agencies, to wit, Memphis Power and Light Company. The complainant here is not the agent of an interstate carrier, nor is it engaged in a joint enterprise with it. The bill alleges that the complainant is engaged in the business of *transmitting* natural gas to the Nashville Gas Company and *supplying* natural gas to the Dupont Company. While there is a difference in the matter of "furnishing" and "distributing" the distinction is not important. The complainant by its contract with the Nashville Gas Company is engaged in a joint undertaking of distributing natural gas to consumers. The Nashville Gas Company

is a subsidiary of the complainant. This was not true in *Memphis Natural Gas Co.* v. *McCanless,* supra.

The case of *East Ohio Gas Co.* v. *Tax Commission of Ohio,* supra, involved the imposition of an *excise tax* upon an interstate carrier of gas, some of it being produced in the State of Ohio, the remainder coming into the state from West Virginia and Pennsylvania. The transmission of the gas was somewhat similar to the instant case, except the latter is not an interstate carrier. The Court of Ohio in considering the matter of distribution after leaving a "transmission line" said [283 U. S. 465, 51 S. Ct. 501]:

> "The treatment and division of the large compressed volume of gas is like the breaking of an original package, after shipment in interstate commerce, in order that its contents may be treated, prepared for sale, and sold at retail." (Citing numerous authorities.)

The opinion, while dealing with the imposition of an *excise tax as a privilege,* is important in the instant case as a judicial pronouncement as to when the transmission of natural gas from one state to another ceases to be interstate and becomes intrastate.

After citing numerous authorities, both State and Federal, the Court makes this further observation: " 'Interstate movement (of natural gas being transported from State to State) *ended when the gas passed into local mains.' "* (Emphasis ours.)

█ We find no escape from the conclusion that when the gas passed from the interstate carrier, Tennessee Gas Transmission Company, to this complainant in Cheatham County, Tennessee, for re-sale the interstate movement came to an end. As pertinent to the question,

and directly in point, the Court concludes with the following:

> " 'The business of supplying, on demand, local consumers is a local business, even though the gas be brought from another state and drawn for distribution directly from interstate mains; and this is so whether the local distribution be made by the transporting company or by independent distributing companies. In such case the local interest is paramount, and the interference with interstate commerce, if any, indirect and of minor importance.' "

In conclusion we feel that the question made on this appeal should not turn upon any distinction between furnishing and distributing natural gas. The tax in all cases is ultimately paid by consumers. When levied upon the seller it is reflected in the consumers' accounts. For us to sustain the position of the complainant herein the result would be that all sales to the Dupont Company would be tax free, while consumers of gas supplied by the Nashville Gas Company would continue to be taxed. By no stretch of the imagination are we justified in concluding that the Legislature intended such a discrimination.

The decree of the Chancellor is reversed, and the bill is dismissed.