**UNITED GAS PIPE LINE COMPANY, a corporation, Plaintiff,**

**v.**

**IDEAL CEMENT COMPANY, a corporation, Defendant.**

**UNITED GAS PIPE LINE COMPANY, a corporation, Plaintiff,**

**v.**

**SCOTT PAPER COMPANY, a corporation, Defendant.**

**Civ. A. Nos. 2082, 2090.**

United States District Court
S. D. Alabama, S. D.

Sept. 25, 1959.

George E. Stone Jr., Mobile, Ala., E. Dixie Beggs, of Yonge, Beggs & Lane, Pensacola, Fla., for plaintiff.

Vickers, Riis, Murray & Curran, Mobile, Ala., for defendant Ideal Cement Co.

Gaillard, Gaillard & Smith, Mobile, Ala., for defendant Scott Paper Co.

DANIEL HOLCOMBE THOMAS, District Judge.

The plaintiff brought these two actions to compel the defendants to reimburse it for taxes paid to the City of Mobile, Alabama, and to Mobile Gas Service Corporation, in compliance with Section 1, paragraph 193, of the License Code of the City of Mobile, Alabama. Plaintiff contends the reimbursements are due it un-

der alleged contracts entered into with the defendants.

Defendants, after moving for and obtaining orders from this Court for a more definite statement of the complaints, under Rule 12(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which statement was furnished by the plaintiff, moved the Court to dimiss the action because the complaint failed to state a claim upon which relief could be granted. The plaintiff then moved the Court for summary judgment, under Rule 56 of the Federal Rules of Civil Procedure. Subsequently, the defendants in separate motions moved for summary judgment under the same rule. The causes came on to be heard in open Court; and after arguments, the aforementioned motions were taken under submission by the Court.

Due to the similar facts involved in the two cases and identical questions of law presented, the cases are here consolidated. The facts raise interesting problems under the Commerce Clause of the United States Constitution, art. 1, § 8, cl. 3. It is for this reason that the Court renders a written opinion.

United Gas Pipe Line Company (hereinafter referred to as United), is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business in the State of Louisiana. It maintains an office in the City of Mobile, Alabama, and has main transmission pipe lines and numerous other installations in the State of Alabama. United employs approximately thirty persons within said State. The corporation transmits gas from Texas, Mississippi, and Louisiana, to Alabama and Florida. In the State of Alabama, United sells only to industrial consumers for their own use and to distributors who in turn supply numerous domestic, commercial, and industrial customers in the Mobile area and elsewhere in the state. Mobile Gas Service Corporation (hereafter referred to as Mobile Gas), is the only distributor supplied by United in the City of Mobile. United delivers gas direct to seven industrial customers lo-

cated in the City of Mobile and its police jurisdiction. Among these seven industrial customers are Ideal Cement Company and Scott Paper Company (hereafter referred to respectively as Ideal and Scott).

The gas is brought into Alabama in United's transmission lines, and delivered into the distribution system of Mobile Gas at a pressure less than that under which the gas is brought into the State. The gas is then delivered by Mobile Gas, pursuant to a contract with United, at further reduced pressures to the customers of United for their industrial use. Mobile Gas, pursuant to the contract with United, makes deliveries, handles accounts, and bills and collects from United's industrial customers; and also handles the maintenance of meters and local servicing of the accounts. Mobile Gas is compensated for these acts and services by United.

On June 28, 1946, Ideal entered into a contract with Mobile Gas for the sale and purchase of natural gas. Under this contract, Ideal agreed to reimburse Mobile Gas for any taxes levied on or assessed upon the production, severance, gathering, transportation, handling, sale or delivery of gas, or upon the right or privilege to produce, sever, gather, transport, handle, sell or deliver gas, which may be assessed in addition to the existing taxes computed in the rates of the contract. This contract was assigned to United by Mobile Gas on November 1, 1954. Subsequently, on July 17, 1956, United and Ideal entered into a contract for the sale and delivery of gas. This contract provided that Ideal would reimburse United for any taxes levied upon and paid by it, or which United under contractual or legal obligations paid to any person or company, which were in excess of the taxes included in the computed monthly rate under the contract. Pursuant to both of the contracts, United delivered large quantities of natural gas to Ideal.

On June 21, 1955, Scott entered into a contract with United in which it was provided that Scott, as under the Ideal contract explained above, would reimburse

United for any taxes levied upon and paid by United which were in excess of the taxes computed in the contractual monthly rate. Large quantities of natural gas were delivered to Scott pursuant to this contract.

The City of Mobile adopted on October 25, 1955, an ordinance which levied a license tax upon each company that sells natural gas in the City of Mobile and within its police jurisdiction. The ordinance levies the tax in question upon:

"Gas Companies: Each person, firm or corporation engaged in the business of selling or distributing natural gas, in an amount equal to 3% of the gross receipts for the business transacted by such person, firm or corporation, in the City of Mobile for the preceding year from the sale of such natural gas sold or distributed from any point or points in the City of Mobile by such person, firm or corporation for any purpose whatsoever.

"The provisions of the above paragraph to be applied to operation in the Police Jurisdiction on the basis of 1½% of said gross receipts." Section 1, par. 193, *License Code of the City of Mobile, Alabama, for the year 1955 and each succeeding year.*

This is a new tax within the provisions of the June 28, 1946, contract between Ideal and Mobile Gas, and is a tax not included in the weighted average price of gas under the provisions of the contractual monthly rate in United's contracts with both Ideal and Scott.

United has paid these taxes to the City of Mobile for the years 1956, 1957, and 1958. It also paid to Mobile Gas, as reimbursement, amounts equal to the increased taxes paid by Mobile Gas to the City of Mobile on the compensation Mobile Gas received for deliveries made to the defendants pursuant to United's contract with Mobile Gas. These taxes were assessed in 1956 and 1957, and are in addition to the taxes paid directly to the City of Mobile by United for these same years. The defendants have refused plaintiff's numerous demands for reimbursement. Thereupon, the plaintiff filed this action against the defendant Ideal in the amount of $61,539.21, and against Scott in the amount of $18,821.14, demanding judgment of the named defendants in the above respective amounts, plus interest and costs.

The defendants ground their motions for dismissal and summary judgment upon the theory that the sale of natural gas to the defendants is interstate commerce, and that the Mobile ordinance places such an undue burden on interstate commerce as to violate the United States Constitution.

There is no dispute as to the facts. Defendants' primary allegation is that the tax is not reimbursable to United because it is unconstitutionally imposed. United's motion for summary judgment rests upon the presumption that the license tax is constitutional and the debt is proven due. It therefore becomes the problem of this Court, in its adjudication of the motions filed before it, to determine the validity of the license tax imposed by the City of Mobile.

Unquestionably, our law volumes abound with litigation and decisions involving the Commerce Clause of the United States Constitution. As it was observed by Mr. Justice Clark in the recent decision of Northwestern States Portland Cement Co. v. State of Minnesota, 1959, 358 U.S. 450, 457, 79 S.Ct. 357, 362, 3 L.Ed.2d 421:

"Commerce between the States having grown up like Topsy, the Congress meanwhile not having undertaken to regulate taxation of it, and the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been no end of cases testing out state tax levies. The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise

guides to the States in the exercise of their indispensable power of taxation. This Court alone has handed down some three hundred full-dress opinions spread through slightly more than that number of our reports. As was said in Miller Bros. Co. v. State of Maryland, 1954, 347 U.S. 340, 344, 74 S.Ct. 535, 538, 98 L.Ed. 744, the decisions have been 'not always clear * * * consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law.' From the quagmire there emerge, however, some firm peaks of decision which remain unquestioned." See also Freeman v. Hewit, 1946, 329 U.S. 249, 252, 67 S.Ct. 274, 91 L.Ed. 265.

It is these "peaks of decision" which this Court now intends to examine in conjunction with the undisputed facts now before the Court.

From the maze of decisions surrounding the rights of a State to regulate or to tax activities of businesses engaged in interstate commerce, but whose activities are colored with local characteristics, there has emerged a line of interrelated cases whose consistency solves the issue now before the Court. These cases, intertwined with the problems of regulation and of taxation, exemplify a series of tests against which this license tax may be assayed for constitutionality.

■ The Supreme Court of the United States set forth the doctrine that interstate commerce shall be free from any direct restrictions or impositions by the States in the landmark case of Gibbons v. Ogden, 1824, 9 Wheat. 1, 6 L.Ed. 23. Over one hundred and twenty-five years later, in the decision of Spector Motor Service v. O'Connor, 1951, 340 U.S. 602, 71 S.Ct. 508, 512, 95 L.Ed. 573, the Court set forth the rule that a State may not levy a tax on the privilege of engaging in interstate commerce. The Court in the Spector case, citing authorities, specifically states that taxes levied by States "upon the privilege of carrying on a business that was *exclusively* interstate in character" have been struck down for constitutional infirmity. The decision goes on to say:

"Our conclusion is not in conflict with the principle that, where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the state, including both interstate and intrastate. [Citing authorities.] The same is true where the taxpayer's business activity is local in nature, * * *." 340 U.S. at page 609, 71 S.Ct. at page 512.

Thus, the Spector rule expressly prohibits taxation levied upon a business which is *exclusively* interstate in character, but preserves the right of the States to levy upon those activities which are of local nature.

In Freeman v. Hewit, 1946, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265, a tax levied upon the gross receipts derived by virtue of an interstate sale was held unconstitutional, because the tax was found to be a *direct* burden upon interstate commerce. The Court observed that the decision of McGoldrick v. Berwind-White Coal Mining Co., 1940, 309 U.S. 33, 60 S.Ct. 388, 398, 84 L.Ed. 565, which sustained a tax "conditioned upon a local activity, delivery of goods within the state upon their purchase for consumption", could be differentiated from a *direct* imposition on interstate commerce. While it is true that the Freeman decision draws a distinction between the powers of a State to regulate on the one hand, and the power to tax on the other, the heart of the decision is the invalidity of the *direct tax* which results in an interference with the freedom of interstate commerce. It should be noted that the tax in the issue now before this Court is not a direct tax or imposition on the free flow of interstate commerce. It is a tax upon business activities which are

locally transacted and consummated in the City of Mobile and its police jurisdiction.

Continuing our discussion of the law regarding the power of the various States to regulate or tax activities involved with interstate commerce, we turn our attention to a series of decisions handed down by the United States Supreme Court which are directly concerned with pipe line companies engaged in the business of interstate commerce.

In East Ohio Gas Co. v. Tax Commission, 1931, 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171, the State of Ohio levied a tax on the gross receipts of every corporation engaged in the business of supplying natural gas to consumers within the State. The gas company was an Ohio corporation which received its gas supply from its own Ohio wells (25%), from West Virginia (72%), and from Pennsylvania (3%). The gas was piped into the State at high pressures. When it reached the company's local 'supply mains, the pressure was greatly reduced; and the expanded gas there divided into thousands of tiny streams that entered the small service lines connecting the service mains with the pipes on the consumers' premises. The Court, after indicating that the movement of gas in the high pressure mains was interstate commerce, stated with regard to the above procedure:

"The treatment and division of the large compressed volume of gas is like the breaking of an original package, after shipment in interstate commerce, in order that its contents may be treated, prepared for sale and sold at retail * * *. It follows that the furnishing of gas to consumers in Ohio municipalities by means of distribution plants to supply the gas suitably for the service for which it is intended *is not interstate commerce, but a business of purely local concern exclusively* within the jurisdiction of the state." (Emphasis our own.) 283 U.S. at page 471, 51 S.Ct. at page 501.

In a subsequent case it was held that the sale of gas in Alabama to industrial consumers by a company that was engaged in piping gas into the State through interstate transmission lines was of a sufficiently local character to sustain a franchise tax on the privilege of doing local business. Southern Natural Gas Corp. v. State of Alabama, 1937, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970. The tax in that case was assailed as a direct burden upon interstate commerce. The gas company sold gas to three Alabama distributors and to one industrial consumer. As to this industrial consumer, the gas company provided and installed at its own expense the service lines and meters extending to the consumer and its subsidiaries. The only difference in that procedure and the procedure utilized in the present case is that in the instant case United contracted with Mobile Gas to utilize its lines and services to service Ideal and Scott. The Court in Southern Natural Gas Corp. quoted with approval the East Ohio Gas Co. decision, and noted the marked analogy between the two procedures of gas transmittal.

The Natural Gas Act of June 21, 1938, 15 U.S.C.A. §§ 717–717w, 52 Stat. 821–833, has made it clear beyond dispute that the interstate transportation and sale of natural gas for resale by a local distributor is interstate commerce of a character beyond the power of the States to regulate or tax. Illinois Natural Gas Co. v. Central Illinois Public Service Co., 1942, 314 U.S. 498, 62 S.Ct. 384, 86 L.Ed. 371. However, the Act itself clearly provides that it *shall not apply* to any sales other than sales in interstate commerce for resale for ultimate public consumption for domestic, commercial, industrial, or any other use. Direct sales for consumptive use were expressly excluded from the Act. Panhandle Eastern Pipe Line Co. v. Public Service Commission of Indiana, 1947, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128. In Panhandle Eastern Pipe Line Co. v. Michigan Public Service Commission, 1950, 341 U.S. 329, 71 S.Ct. 777, 95 L.Ed. 993, sometimes referred to as the 2nd Panhandle case, the Court re-

affirmed the position taken in the earlier Panhandle decision and went on to say, with regard to a gas company which sold gas from interstate transmission lines:

"The sale to industrial consumers as proposed by appellant is clearly interstate commerce. [Citing cases.] But the sale and distribution of gas to local consumers made by one engaged in interstate commerce is 'essentially local' in aspect and is subject to state regulation without infringement of the Commerce Clause of the Federal Constitution, article 1, § 8, cl. 3. In the absence of federal regulation, state regulation is required in the public interest. [Citing cases.] These principles apply to direct sales for industrial consumption as well as to sales for domestic and commercial uses." 341 U.S. at page 333, 71 S.Ct. at page 779.

█ It is well settled that where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the tax rate to a fair proportion of the taxpayer's business done within the state, including interstate as well as intrastate commerce. Interstate Oil Pipe Line Co. v. Stone, 1948, 337 U.S. 662, 69 S.Ct. 1264, 93 L.Ed. 1613; Spector Motor Service v. O'Connor, supra. There is present, however, the requirement that the tax must not discriminate against interstate commerce. Interstate Oil Pipe Line Co. v. Stone, supra.; Northwestern States Portland Cement Co. v. State of Minnesota, supra; Memphis Steam Laundry Cleaner, Inc. v. Stone, 1952, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436; Nippert v. City of Richmond, 1946, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760; Memphis Natural Gas Co. v. Stone, 1948, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832; International Harvester Co. v. Department of Treasury, 1944, 322 U.S. 340, 64 S.Ct. 1019, 1030, 88 L.Ed. 1313.

In addition the Court has held·

"* * * where the corporations carry on a local activity sufficiently separate from the interstate commerce, state taxes may be validly laid, even though the exaction from the business of the taxpayer is precisely the same as though the tax had been levied upon the interstate business itself." Memphis Natural Gas Co. v. Stone, supra, 335 U.S. at page 87, 68 S.Ct. at page 1478.

All of these decisions lead to the most recent expression on this subject by the Supreme Court in Northwestern States Portland Cement Co. v. State of Minnesota, 1959, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421. While it is true that the Court was there concerned with state income taxes based on revenue derived from interstate business transactions, the basic principles of law are the same with which we are herein concerned. The crux of the Northwestern decision appears to lie in the following excerpts from the opinion:

"We conclude that net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same." 358 U.S. at page 452, 79 S.Ct. at page 359.

"While it is true that a State may not erect a wall around its borders preventing commerce an entry, it is axiomatic that the founders did not intend to immunize such commerce from carrying its fair share of the costs of the state government in return for the benefits it derives from within the State. The levies are not privilege taxes based on the right to carry on business in the taxing State." 358 U.S. at pages 461–462, 79 S.Ct. at page 364.

"As was said in Spector, 'taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so

imposed that their burden will be reasonably related to the powers of the State and [are] nondiscriminatory.' 340 U.S. at page 609, 71 S.Ct. at page 512." 358 U.S. at page 464, 79 S.Ct. at page 365.

From the herein discussed cases, the following standards appear to emerge by which the license tax in question must be tested: (1) is the tax levied on the privilege of engaging in interstate commerce, (2) is the tax imposed *directly* upon interstate commerce, (3) is the tax discriminatory, (4) is the tax levied against a business engaged *exclusively* in interstate commerce, (5) does the tax impede the free flow of trade between the various States, and finally, (6) is the tax levied on sales of natural gas made by a company to a distributor for resale within the State? If any one of these questions cannot be negatively answered, then the license tax must fall as being repugnant to the United States Constitution. It is against these tests and the decisions by which they are depicted that this Court will evaluate the City of Mobile's license tax, inasmuch as the City of Mobile's License Code expressly provides under Section 16:

"No provision of this Code shall be applied: (a) so as to impose any *unlawful* tax or *unlawful* burden on interstate commerce or on any activity of the State or Federal governments; or (b) in any manner which is repugnant to or violates any provision of the United States or Alabama constitutions."

This Court is of the opinion that each of the above questions, when tested against the activities of United in the State of Alabama and the City of Mobile, must be answered in the negative. The entering into the State of the gas through United's main transmission lines is interstate commerce; but the dissemination of the gas at lower pressures into the lines of Mobile Gas, and the subsequent delivery to Ideal and Scott, is a procedure which is colored with the characteristic of being *local in its application and nature*. The sales pursuant to the contracts with Ideal and Scott are sales to industrial consumers, and not sales to a distributor, such as Mobile Gas, for resale to ultimate consumers. The local delivery of gas to these industrial consumers is not through pipes owned and installed by United, but rather the pipes of Mobile Gas, pursuant to the existing contract between United and Mobile Gas. Southern Natural Gas Corporation v. State of Alabama, supra. This method of delivery itself gives the distribution to the defendants a local characteristic.

This is not a tax upon the privilege of engaging in interstate commerce. It is a tax upon business actually transacted in the City of Mobile and its police jurisdiction. From the decisions discussed above, it is evident that a state or municipality may levy upon the privilege of doing business, or upon business actually transacted, which is of a local nature. It was not the intent of Congress, nor was it the intent of the framers of the Constitution, that a corporation should be permitted to engage in local business, in competition with other businesses, and not bear its just proportionate share of the costs of carrying on state and local government, in return for the benefits it receives from the local government. Northwestern States Portland Cement Co. v. State of Minnesota, supra. Surely, it was not the intent of these bodies that a corporation or person should engage in such affairs and then hide behind the cloak of interstate commerce for protection against bearing its just burden.

Neither can it be successfully argued that this tax is an interference with, or a direct imposition upon, the free flow of interstate commerce; nor can it be said that the tax is discriminatory against interstate commerce activities. The tax is simply a levy upon the business transactions of any and all persons, firms or corporations which sell natural gas to individual consumers in the City of Mobile and its police jurisdiction. It is the same tax which is levied upon Mobile Gas, a local utility; and surely it can be said that such a levy upon Mobile Gas is constitutionally valid. It follows that the

**756**

tax here imposed upon United for its local transactions is not discriminatory. The tax is not levied upon the sales made by United to Mobile Gas, but is levied upon the sales made by United to industrial consumers. This Court fails to vision how this impedes the free flow of interstate commerce.

Plaintiff's motion for summary judgment against the defendants, Ideal Cement Company and Scott Paper Company, will be granted; and the defendants' motions to dismiss and for summary judgment will be denied.